# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

MARTINEZ S. AYTCH,        )
                                  )
            Plaintiff,      )     Case No.: 2:14-cv-00139-GMN-CWH
   vs.                          )
                                  )           **ORDER**
JAMES G. COX, *et al.*,     )
                                  )
           Defendants.    )
_____ )

Presently before the Court is the Motion for Preliminary Injunction (ECF No. 38) filed by Plaintiff Martinez S. Aytch ("Plaintiff"). Defendants filed a Response. (ECF No. 49).[1] For the reasons discussed below, Plaintiff's Motion is **GRANTED**.

## I.     <u>BACKGROUND</u>

This prisoner litigation involves allegations of constitutional violations and concerns an inmate's medical and religious dietary needs. When this action originated, Plaintiff—a pro se litigant—resided at the Southern Desert Correctional Center ("SDCC") in the custody of the Nevada Department of Corrections ("NDOC"). (Compl. at 2, ECF No. 5). Plaintiff now resides in NDOC's custody at Ely State Prison. (*See* Notice of Change of Address, ECF No. 43). He brings this action under 42 U.S.C. § 1983 against a number of NDOC and SDCC officials, including: James Cox ("Cox"), NDOC director; Brian Williams, Sr. ("Williams"), SDCC warden; Marcy Agnes Boni ("Boni"), NDOC dietician; Rabbi Joseph Elchonon ("Elchonon"), NDOC Kashrus consultant; Justin Reyes ("Reyes"), food service manager; K. McCoy

---

[1] Despite being granted an extended deadline to file a response, (Order, ECF No. 42), Defendants failed to respond to Plaintiff's Motion by the extended deadline of March 19, 2015. Almost a month after the extended deadline, Defendants filed their Opposition to Plaintiff's Motion for Preliminary Injunction. (ECF No. 49). Defendants thereafter filed a Second Motion to Extend Time (ECF No. 50), which was granted by Magistrate Judge Carl W. Hoffman (ECF No. 51). Accordingly, the Court will consider Defendant's Opposition. (ECF No. 49).

1  ("McCoy"), casework classification specialist; and J.J. Youngblood ("Youngblood"), SDCC

2  chaplain (collectively, "Defendants"). (*Id.* at 3–4).

3        In his Complaint, Plaintiff alleges that he is a practicing Muslim, and as such, he

4  requires a diet in compliance with the tenets of his religion. (*Id.* at 8).  Plaintiff also alleges that,

5  in addition to requiring a diet compliant with his religious tenets, he requires a low sodium diet

6  pursuant to a doctor's orders. (*Id.*).  Moreover, Plaintiff alleges that his request to receive a diet

7  both low in sodium and in line with his religious tenets was denied by Defendant Reyes. (*Id.*).

8  Plaintiff subsequently filed a grievance with prison officials, arguing a constitutional right to

9  "be provided with food sufficient to sustain him in good health that satisfies the dietary laws of

10  his religion." (*Id.* at 9).  This grievance was denied by Defendant McCoy, who allegedly found

11  that in order to receive a religious diet, Plaintiff must comply with NDOC administrative

12  regulation ("AR") 814 by signing NDOC form 2523—a Release of Liability for Refusal of

13  Medical Treatment. (*Id.* at 9, 13).  Plaintiff states that Defendant McCoy's finding was upheld

14  twice, first by Defendant Williams and then by Defendant Cox. (*Id.* at 9).

15        Plaintiff further alleges in his Complaint that Defendant Reyes began providing him

16  with the common fare religious diet without Plaintiff's consent or the consent of a doctor. (*Id.*

17  at 6:12–18).  Plaintiff's blood pressure "became extremely high as a result," and Plaintiff was

18  placed back on the low sodium diet. (*Id.* at 6:18–23).  Again, Plaintiff turned to the NDOC's

19  grievance process to no avail. (*Id.* at 6:24–28).  Plaintiff additionally avers that "he is not being

20  provided the same right to an appropriate religious and medical diet that is being afforded to

21  fellow prisoners who adhere to more conventional religious precepts." (*Id.* at 7:1–4).  For

22  example, Plaintiff alleges that "Rabbi E. Joseph and NDOC dietitian Mary Agnes Boni [have]

23  developed a low sodium medical diet/common fare religious diet menu to accommodate

24  Christian prisoners, Buddhist prisoners, Native American prisoners, Hindus ect. [sic]." (*Id.* at

25  10).

Plaintiff's Complaint was screened and filed on May 14, 2014. (ECF No. 5). It contains the following causes of action: (1) violation of Plaintiff's First Amendment right to free exercise of religion; (2) violation of Plaintiff's equal protection rights; and (3) violation of Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment. (*Id.* at 8–11).[2] In the instant motion, Plaintiff asks the Court for a preliminary injunction ordering Defendants to provide him with "a medical low sodium diet and a diet that conforms to his religious tenets (a Halal diet)." (Mot. for Prelim. Inj. at 2, ECF No. 38).

## II. <u>LEGAL STANDARD</u>

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). Although the same general principles apply, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir.1984). Therefore, "[m]andatory preliminary relief…should not be issued unless the facts and law clearly favor the moving party. *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979). The Prison Litigation Reform Act ("PLRA") additionally requires that preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

---

[2] Defendants read Plaintiff's Complaint to also include a Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim. (Response 3:20-22). However, neither this Court nor Judge Hoffman is of the opinion that a RLUIPA claim has been asserted by Plaintiff. (*See* Screening Order, ECF No. 4).

## III.   DISCUSSION

For the reasons discussed below, the Court concludes that Plaintiff has established each of the four elements necessary for the preliminary injunction to issue, and moreover, that the facts and law are clearly in his favor.  Accordingly, the Court finds that Plaintiff is entitled to a preliminary injunction ordering Defendants to provide him with a low sodium diet that conforms to his religious tenets.

### A.    Likelihood of Success on the Merits

Although Plaintiff asserts three claims in his Complaint, the Court finds that Plaintiff is likely to succeed on the merits of his First Amendment claim and therefore will not address the merits of Plaintiff's remaining claims. *See, e.g.*, *Randazza v. Cox*, 920 F. Supp. 2d 1151, 1156 (D. Nev. 2013).

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof." U.S. Const., amend. I.  The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  The right to free exercise of religion, however, "is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbit*, 833 F.2d 196, 197 (9th Cir. 1987).

According to Plaintiff, AR 814 impinges on his right to freely exercise his religion as it forces him to "choose between accepting his religious diet [and] his medical low sodium diet." (Mot. for Prelim. Inj. at 4).  As the Ninth Circuit has said, "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  In *Turner*, the Supreme Court set forth four factors for courts

to consider when determining if a prison regulation is reasonably related to legitimate penological interests: (1) whether there is a valid and rational interest "between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) the impact that accommodating "the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) the absence or existence of "ready alternatives… that fully accommodate[] the prisoner's rights at *de minimis* cost to valid penological interests." 482 U.S. at 89–91.

### 1. Rational Relation between Prison Regulation and Government's Interest

Although Defendants argue that "Plaintiff cannot demonstrate that he is likely to succeed on the merits, when considering the legitimate penological interests of the NDOC," (Response 5:21-22), nowhere in Defendants' Opposition do they indicate what penological interests are served by AR 814.  Nevertheless, this Court has previously found that AR 814 was rationally related to "running a simplified food service"—a penological interest advanced by NDOC in previous litigation. *See, e.g.*, *Parks v. McDaniel*, No. 03:06-CV-00095-LRH-VPC, 2007 WL 2891499, at *8 (D. Nev. Sept. 28, 2007) ("Prisons have a legitimate penological interest in the costs of 'running a simplified food service, rather than one that gives rise to many administrative difficulties.'") (quoting *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir.1993)); *Shilling v. Crawford*, No. 205CV-00889-PMP-GWF, 2007 WL 2790623, at *17 (D. Nev. Sept. 21, 2007) ("[N]ot providing special diets is logically connected to[running a simplified food service], this factor favors the government.").  As a result, this factor weighs towards a finding of reasonableness.

### 2. Alternative Means of Exercising the Constitutional Right

Defendants argue that there are "alternative means available to Plaintiff to exercise his religious beliefs." (Response 5:22).  Again, however, they fail to suggest what those

alternatives might be.  Neither has Plaintiff alleged that he is unable to otherwise express his

Muslim faith by, for example, observing Islamic holidays like Ramadan or congregating for

daily prayer and discussion. *See O'Lone*, 48 U.S. at 351-52 (discussing alternative ways to

express the Muslim faith apart from attending Jumu'ah—a congregational service traditionally

observed on Friday afternoons).  Even if Plaintiff remains able to express his Muslim faith in

these alternative ways, however, the Court finds that this factor weighs against a finding of

reasonableness because none of these alternatives would allow Plaintiff to abide by the specific

tenets of the Muslim faith he alleges he violates by consuming the low sodium diet.  The right

being constrained here is not merely of expression, but "involves the forced disobedience of a

religious law." *See Shilling v. Crawford*, No. 205CV-00889-PMP-GWF, 2007 WL 2790623, at

*17 (D. Nev. Sept. 21, 2007).  "It is one thing to curtail various ways of expressing belief, for

which alternative ways of expressing belief may be found. It is another thing to require a

believer to defile himself, according to the believer's conscience, by doing something that is

completely forbidden by the believer's religion." *Ward v. Walsh*, 1 F.3d 873, 878 (9th Cir.

1993).

### 3.    Impact of Accommodating the Right

"The third [*Turner*] factor requires an examination of the potential effects on the guards,

other inmates, and prison resources if the asserted right is protected by the courts."

*Bahrampour v. Lampert*, 356 F.3d 969, 975 (9th Cir. 2004) (citing *Turner*, 482 U.S. at 60).

Defendants argue only that there would be an impact on prison resources.  In fact, Defendants

devote the majority of their Opposition to arguing that the costs associated with providing

Plaintiff with a low sodium Halal diet "cannot be overcome." (Response at 5:26).

According to Defendants, NDOC currently offers nine medical diets and one religious,

kosher diet that complies with the tenets of both the Jewish and Muslim religions. (*Id.* at 5:28–

6:6).  To make a kosher version of each of the nine medical diets available at NDOC's six

major prisons, Defendants estimate that it would cost them in excess of $330,000. (*Id.* at 6:9–10). This estimate includes the cost of constructing new kosher kitchens at five of the prisons, which allegedly would be necessary to accommodate the additional food preparation workers and equipment required to meet increased demand for medical kosher meals. (*Id.* at 6:16–25). Also included in the estimate is "the purchase [of] additional cooking appliances and other kitchen items to assure that the kosher laws could be abided by, infrastructure for monitoring the preparation of the kosher diets and the development of the individual kosher religious diets." (*Id.* at 6:11–14). "[T]he ongoing cost of providing and maintaining the medical religious diets," as told by Defendants, is too speculative to be included in the estimate. (*Id.* at 6:11–14).

Defendants have not convinced the Court that accommodating Plaintiff's constitutional rights will require Defendants to develop nine new diets, and that there will be such a demand for the medical kosher diets that five existing prison kitchens will have to be rebuilt.[3] Although Defendants' assertions of budget challenges have not fallen on deaf ears, "the cost of protecting a constitutional right cannot justify its total denial." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). Accordingly, this factor weighs against a finding of reasonableness.

### 4. Availability of Ready Alternatives

Plaintiff argues that the only alternative to entirely forgoing his First Amendment right to the free exercise of religion is for him to sign NDOC form 2523. (Mot. for Prelim. Inj. at 4). He further argues that signing NDOC form 2523 would not fully accommodate his rights because doing so would amount to a waiver of his Eighth Amendment rights. (*Id.*). Plaintiff is correct as the Eighth Amendment requires that "prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731

---

[3] It is the Court's understanding that when the kosher diet was originally developed, it was not offered at all of NDOC's facilities. *See, e.g., Shilling*, 2007 WL 2790623, at *17-19 ("Defendants argue they have not violated Plaintiff's free exercise rights because accommodating a kosher diet at HDSP would be costly and disruptive and they accommodated Plaintiff by offering him a transfer to a facility that provides kosher meals.").

(9th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  Because "an inmate cannot be forced to sacrifice one constitutionally protected right solely because another is respected," *Allen v. City & Cnty. of Honolulu*, 39 F.3d 936, 940 (9th Cir. 1994),  inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea*, 833 F.2d at 198.  This factor thus weighs against a finding of reasonableness as Defendants have not suggested, and the Court is unable to conjure, any ready alternatives that would fully accommodate Plaintiff's First Amendment right to the free exercise of religion.

In sum, the Court has found that three of the four *Turner* factors weigh against a finding of reasonableness.  As a result, the Court finds that Plaintiff will likely succeed in proving that AR 814 is not reasonably related to any valid penological objectives, and consequently, that Plaintiff is likely to succeed on his First Amendment claim.  Accordingly, this factor weighs in favor of an injunction.

### B.    Irreparable Harm

According to Plaintiff, AR 814 remains in effect despite the fact that Plaintiff alerted Defendants to its unconstitutionality by filing a grievance. (Mot. for Prelim. Inj. at 5).  Without preliminary relief, Plaintiff reasons that Defendants will continue to prevent him from freely exercising his religion and therefore infringe on his First Amendment right. (*Id.*).  Plaintiff cites to *Elrod v. Burns*, 427 U.S. 347 (1976), to support his argument that any harm resulting from a violation of a constitutional right is irreparable as a matter of law. (Mot. for Prelim. Inj. at 5).

In *Elrod*, the Supreme Court held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373.  Although it was the *Elrod* plaintiff's First Amendment right to freedom of expression that was at issue, the Ninth Circuit has relied on *Elrod* where a plaintiff was alleging violation of his First Amendment right to freedom of religion. *See Warsoldier v. Woodford*, 418 F.3d 989, 1002

1  (9th Cir. 2005).  Because the Court finds that Plaintiff is likely to suffer irreparable harm in the

2  absence of injunctive relief, this factor weighs in favor of an injunction.[4]

3      **C.   Balance of the Equities**

4      Plaintiff argues that the balance of the equities tips in his favor because of the irreparable

5  nature of the injury he will suffer without preliminary relief and because he is seeking an

6  injunction that merely requires "Defendants to perform their pre-existing duties under the

7  United States Constitution." (Mot. for Prelim. Inj. at 6).  Essentially, Defendants' counter-

8  argument is that if they accommodate Plaintiff's Eighth and First Amendment rights, they will

9  have to accommodate all prisoners' First and Eighth Amendment rights, which would pose a

10  significant financial obstacle. (Response at 8:7–11).  Again, while not unsympathetic to

11  Defendants' situation, the Court agrees with Plaintiff that Defendants have a pre-existing duty

12  here. *See McElyea*, 833 F.2d at 19 (holding that inmates "have the right to be provided with

13  food sufficient to sustain them in good health that satisfies the dietary laws of their religion.").

14  Therefore, the costs of fulfilling that duty cannot outweigh the irreparable harm that is sure to

15  face Plaintiff if he is not awarded preliminary relief.  Because the Court finds that the balance

16  of the equities tips in the Plaintiff's favor, this factor weighs in favor of an injunction.

17      **D.   Public Interest**

18      Finally, Plaintiff argues that protecting constitutional rights is generally in the public's

19  interest. (Mot. for Prelim. Inj. at 6).  Defendants reassert their cost argument here, arguing that

20  it is not in the public interest "to impose upon the State of Nevada['s] tax paying public the

21  burden of facilitating nine separate religious medical diets, particularly during times of

22  economic struggles." (Response 8:17–19).  The Nevada public's general aversion to paying

23

24  _____

[4] Defendant's sole argument as to this factor—that Plaintiff is really not suffering any harm at all because "the
Quran at 2:173, permits a Muslim to consume a non-halal diet if none is otherwise available," (Response 7:24–

25  25)—is ineffective as it is well established that "[j]udges may not determine the truth or falsity of matters of
faith." *United States v. Ward*, 989 F.2d 1015, 1017 (9th Cir. 1992); *Callahan v. Woods*, 658 F.2d 679, 687 (9th
Cir. 1981) (relying on *United States v. Ballard*, 322 U.S. 78, 87 (1944)).

taxes is undoubtedly outweighed by its affirmative interest in the protection of the rights guaranteed to it by the Constitution. *See Bounds*, 430 U.S. at 825.  Accordingly, this factor weighs in favor of an injunction.

As demonstrated above, Plaintiff has established that he is likely to succeed on the merits of his claim, he is likely to suffer irreparable harm in the absence of preliminary relief, the balance of the equities tips in his favor, and a preliminary injunction is in the public's interest.  Moreover, the Court finds that the facts and law are clearly in the Plaintiff's favor, and that issuing the preliminary injunction as requested by Plaintiff would satisfy the PLRA standards set forth above. *See supra* Part II.  Accordingly, Plaintiff's Motion for a Preliminary Injunction (ECF No. 38) is granted.

## IV.   <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Plaintiff's Motion for a Preliminary Injunction (ECF No. 38) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion that the Motion for Preliminary Injunction be Submitted for Decision (ECF No. 47) be **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike (ECF No. 53) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants shall have **twenty-one (21) days** from the date of this Order to provide Plaintiff with a diet that both complies with the tenets of the Muslim faith and meets Plaintiff's low sodium medical needs.

**DATED** this 21st day of May, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge